**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| NATIONAL LABORATORIES, LLC, THE LUKENS INSTITUTE, LLC, TREASURE COAST RECOVERY, LLC | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 9:17-cv-81178-DMM ) |
| UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE SERVICES, INC., UNITEDHEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICES LLC, OPTUM, INC. and GOLDEN RULE INSURANCE COMPANY | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**<u>FIRST AMENDED COMPLAINT</u>**

National Laboratories, LLC ("National Labs"), The Lukens Institute, LLC, doing business as Executive Recovery Center (hereafter referred to as "Lukens Institute") and Treasure Coast Recovery, LLC ("Treasure Coast Recovery"), assert the following in support of their claim for damages, against Defendants:

## I.    INTRODUCTION

1.    Defendant UnitedHealth Group Inc., through its wholly owned subsidiaries including United HealthCare Services, Inc., UnitedHealthCare Insurance Company, United HealthCare Services LLC, Optum, Inc., and Golden Rule Insurance Company (collectively "United"), is a fully integrated company that is in the business of insuring and administering health insurance plans.   Under the terms of the United Plans, United is obligated to make benefit payments from its own assets (for the fully-insured United Plans) or the assets of the plan itself

(for the self-insured United Plans) when individuals insured by one of these plans ("Members") obtain healthcare treatment that is covered by the terms of that plan (a "Covered Service").

2.      Many health insurance plans for which United acts as insurer and/or administrator ("United Plans") are "welfare benefit plans" to which the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* applies.  For many ERISA-covered plans, United serves as the claims administrator responsible for determining whether any given claim is covered by the plan and issuing any benefit payments.  Accordingly, United is an ERISA fiduciary for the self-insured United Plans to the extent it exercises these functions.

3.      Plaintiffs bring this action because of United's repeated refusal to process claims, determine benefits, issue benefit payments owing to the Plaintiffs and/or maintain reasonable claims procedures under the United Plans.

4.      Plaintiff National Laboratories, LLC is a nationwide clinical reference toxicology laboratory that is certified and accredited pursuant to the Clinical Laboratory Improvement Amendments of 1988 ("CLIA") and with Commission on Office Laboratory Accreditation ("COLA"), an agency similar to The Joint Commission, which accredits and inspects laboratories in the name of the CLIA.  National Labs is a licensed reference laboratory, specializing in the detection of substances of abuse for addiction treatment, and provides precise testing using advanced liquid chromatography mass spectrometry technology.  National Labs provides services to United Members on an out-of-network basis because National Labs does not have a direct in-network written contractual relationship with United.

5.      The Lukens Institute and Treasure Coast Recovery are licensed and accredited substance use disorder treatment facilities located in Florida.  The Lukens Institute is licensed by, and in good standing with, Florida's Department of Children and Families, Substance Abuse and

Mental Health Program Office as a Substance Abuse Provider.  The Lukens Institute also has been accredited as an Clinical Laboratory by the Florida Commission on Office Laboratory Accreditation since 2015.  Treasure Coast Recovery is licensed by, and in good standing with, Florida's Department of Children and Families, Substance Abuse and Mental Health Program Office as a Substance Abuse Provider.  Treasure Coast Recovery also has been accredited as a Clinical Laboratory by the Florida Commission on Office Laboratory Accreditation since 2015.

6.      The Lukens Institute and Treasure Coast Recovery provide services to United Members on an out-of-network basis because The Lukens Institute and Treasure Coast Recovery do not have a direct in-network written contractual relationship with United.

7.      Over the years, Plaintiffs have submitted thousands of claims to United for benefits owed under their patients' United Plans.  In many prior instances for an extended period of time, United adjudicated the claims and either paid those claims as the insurer or, when it was acting as a plan administrator, paid or caused those plans to pay Plaintiffs directly for benefits that United determined to be due and owing under the applicable United Plan terms.  This also was consistent with industry standard custom, usage and practice between the parties, as well as similarly situated entities in the industry.

8.      In late 2015, however, United began to refuse to adjudicate claims submitted by National Labs and failed to make a determination on whether benefits were owing under the applicable United Plan terms.  Instead, United improperly "flagged" National Labs' claims and refused to adjudicate such claims without excessive delay and unnecessary medical records and other information under applicable industry standards.  Moreover, even when National Labs has submitted medical records and other documentation requested by United, United still refused to process claims, make benefits determinations, pay the claims under applicable insurance policies

or health benefit plans or cause the plans to pay the benefits due and owing under the applicable United Plan terms.  United simply left the claims in an unprocessed limbo.

9.      From late 2015 through May 2017, National Labs repeatedly contacted United to determine what additional information was needed to get United to adjudicate the claims and pay amounts due and owing under the applicable United Plan terms for medically necessary services provided to United Members.  United never substantively responded to the thousands of pages of medical records and other documentation submitted by National Labs, and refused to communicate to Plaintiffs about why they are refusing to adjudicate benefits under the United Plan terms.

10.     On or around July 2016, Lukens Institute and Treasure Coast Recovery learned that claims submitted for payment were being "audited" by United and "flagged" for review prior to processing them.  United communicated to Plaintiffs that "audit" of Lukens Institute and Treasure Coast Recovery was due to their review of claims submitted by National Labs.  Thus, like with National Labs, United placed claims by these providers in an unprocessed limbo.

11.     Since August 2015, Plaintiffs have submitted thousands of claims to United for medically necessary services requesting processing and payment of benefits due and owing under the applicable United Plan terms.  Plaintiffs followed the same long established process for these claims as Plaintiffs had used with United over an extended time period when United routinely processed and caused payment to occur for parallel services rendered.  Yet United has refused to adjudicate benefits under the United Plan terms, or improperly denied medically necessary claims in an arbitrary and capricious manner without conducting a full or fair review or applying a reasonable procedure for processing and adjudicating these claims, resulting in over $100 million dollars in charges due and owing to Plaintiffs.

## II.      PARTIES

12.     National Labs is a licensed reference laboratory and maintains its principal place of business in Martin County, Florida.

13.     The Lukens Institute is a licensed substance use disorder treatment facility authorized to and doing business within the State of Florida.  The Lukens Institute maintains its principal place of business in Martin County, Florida.

14.      Treasure Coast Recovery is a licensed substance use disorder treatment facility authorized to and doing business within the State of Florida.  Treasure Coast Recovery maintains its principal place of business in Martin County, Florida.

15.     On information and belief, Defendant UnitedHealth Group Inc. is a publicly traded Delaware corporation with its principal place of business in Minnesota.  It issues health insurance and issues, administers, and makes benefit determinations related to ERISA health care plans nationally through its various wholly-owned and controlled subsidiaries, including but not limited to United HealthCare Services, Inc., United HealthCare Service LLC, UnitedHealthCare Insurance Company and Optum, Inc.  Defendant UnitedHealth Group Inc. operates as, and owns the trademark to, "UnitedHealthcare."

16.     On information and belief, Defendant United HealthCare Services, Inc. is a Minnesota corporation with a principal place of business in Minnetonka, Minnesota and which conducts insurance operations in the State of Florida.  It is a wholly-owned subsidiary of Defendant UnitedHealth Group Inc., and serves as UnitedHealth Group, Inc.'s operating division.

17.     On information and belief, Defendant UnitedHealthcare Insurance Company is a Connecticut corporation with a principal place of business in Connecticut and which conducts business as an insurance company in the State of Florida, and is a subsidiary of Unimerica, Inc.,

which is wholly-owned and controlled by Defendants United HealthCare Services, Inc.  United Healthcare Insurance Company underwrites insurance provided by United Healthcare Services, Inc. and its state-level subsidiaries/affiliates.  It also participates in the claims administration process related to United Plans insured or administered by such subsidiaries/affiliates, and issues and administers other United Plans.

18.     On information and belief, Defendant Optum, Inc. is a Delaware corporation with a principal place of business in Minnesota.  It is a wholly-owned subsidiary of Defendant UnitedHealth Group, Inc.

19.     On information and belief, Defendant Golden Rule Insurance Company is an Indiana corporation with a principal place of business in Indiana.  It is a wholly-owned subsidiary of Defendant UnitedHealth Group, Inc.

20.     On information and belief, Defendants collectively operate to fulfill the purpose, goals and policies of Defendant UnitedHealth Group Inc.  United HealthCare Services, Inc. provides health benefit programs for individuals and families, employers, military service personnel, retirees and their families, and Medicare and Medicaid beneficiaries. UnitedHealthcare Insurance Company and Golden Rule Insurance Company underwrite many of the UnitedHealthcare individual and family insurance products.  United Healthcare Service, LLC provides administrative, financial and managerial services to affiliated companies.  Optum, Inc. is a health services business serving the health care marketplace, including payers, and care providers, through its OptumHealth, OptumInsight and OptumRx businesses.  The manner in which all of the Defendants work together obscures any purported material distinctions between them in their dealings with the Plaintiffs, and appears intended to demonstrate a unity of purpose and existence under a single unified United operation.  Accordingly, any purported distinctions

among the Defendants should be disregarded for purposes of the matters addressed in this Complaint.

21.     Plaintiffs are informed and believe that United is party to administrative service agreements with self- and fully-insured United Plans.  Pursuant to these agreements, United has actual or ostensible authority to act on behalf of those United Plans for: providing plan documents to plan Members; communicating with plan Members and healthcare providers; verifying Member benefits and eligibility to providers; interpreting plan terms and provisions; receiving claims for healthcare services provided by Plaintiffs; processing and pricing claims for healthcare services provided by Plaintiffs; processing and administering  claims and appeals for healthcare services provided by Plaintiffs; approving or denying claims and appeals for healthcare services provided by Plaintiffs; interpreting plan documents; determining whether and how to pay claims for healthcare services provided by Plaintiffs; issuing remittance advices, claim status reports and explanations of benefits; and making and administering payments.  At all relevant times, Plaintiffs, on their own behalf and on behalf of the patients at issue, dealt directly with United, submitted claims for reimbursement directly to United, and communicated about the claims directly with United, per industry standard and the well-established custom, usage and practice between the parties.

22.     Plaintiffs are informed and believe that, as the appointed agent of the administered plans, United is in possession of all facts, information and data concerning and related to the authorization, processing, determination, pricing, and payment of all claims submitted by Plaintiffs or their healthcare providers with respect to the benefit plans.

23.     With respect to any United plans that may be ERISA plans, Plaintiffs are informed and believe that United is a proper ERISA defendant because it "control[s

administration of the plan[s]" at issue, including "discretion, responsibility or control over administration of the [plans]." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). Specifically, with respect to all of the ERISA claims at issue herein, whether or not actually performed, Plaintiffs are informed and believe that United had responsibility to:

      a.      draft and provide plan Members with plan documents;

      b.      operate a centralized verification and authorization telephone number to handle calls for Members of ERISA plans;

      c.      receive and process Plaintiffs' electronic bills for claims for Members of ERISA plans;

      d.      communicate with Plaintiffs on behalf of ERISA plans regarding authorization of laboratory testing procedures;

      e.      issue remittance advices and EOBs;

      f.      price claims for ERISA plans;

      g.      communicate with Plaintiffs with respect to the processing of claims on behalf of ERISA plans; and

      h.      issue payment to Plaintiffs on behalf of ERISA plans.

### III.    JURISDICTION AND VENUE

    24.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States. This Court also has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) because the matter in controversy involves the enforcement of rights under ERISA.

    25.    The Court has supplemental jurisdiction over Plaintiffs' state law causes of action pursuant to 28 U.S.C. § 1367 because all claims alleged herein form part of the same case or controversy under Article III of the United States Constitution.

26.     This Court also has jurisdiction over all of the causes of action in this matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship.

27.     The Court has personal jurisdiction over United because United transacts business, resides, and/or can be found within the State of Florida.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district and because Defendants conduct a substantial amount of business in this judicial district. Venue is also proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because United administered relevant ERISA plans in the district, the breach took place in the district, and/or United is found in the district.

## IV.     FACTUAL ALLEGATIONS

29.     National Labs is a nationwide clinical reference toxicology laboratory specializing in the detection of substances of abuse for addiction treatment, and provides precise testing using advanced liquid chromatography mass spectrometry technology.

30.     The Lukens Institute focuses on the provision of professional therapy with licensed and professional psychologists in an environment that both supports long term addiction recovery and ensures comfort.  The alternative addiction treatment services that the Lukens Institute offers combines intensive group therapy with focused individual psychotherapy, providing clients with treatment results far beyond what standard addiction counseling programs are able to accomplish.

31.     Treasure Coast Recovery provides quality treatment to those suffering from the disease of addiction by providing evidence-based, integrated substance abuse, mental health, and physical health services, utilizing current and innovative therapies and emerging medical protocols to help promote effective treatment results and achieve sobriety for its patients.

32.     Beneficiaries of the United Plans enter into a "Financial Agreement and Limited Authorization" ("Assignment of Benefits") with Plaintiffs whereby the beneficiaries assign benefits to Plaintiffs and authorize Plaintiffs to obtain direct payment from health care carriers like those insured and administered by United for services rendered.   The Assignment of Benefits also authorizes the Plaintiffs, its agents, contractors and/or billing representatives, to act as the patient's agent for purposes of obtaining direct payment for the services provided.

33.     Plaintiffs followed industry standard processes with United for verifying coverage, and where necessary obtaining authorization or other approval from United, for the medically necessary services rendered that are at issue in this lawsuit.   The treatment centers routinely contacted United to verify coverage and eligibility, and where necessary obtain authorization or otherwise approval from United.   The nature of the treatment for patients with substance abuse addiction diseases includes the types of services rendered by the Plaintiffs that are at issue here.   The Lukens Institute and Treasure Coast Recovery are the places where beneficiaries come for this treatment, and National Labs provides the substance abuse testing that beneficiaries at The Lukens Institute and Treasure Coast Recovery must receive as an inherent part of the work done at The Lukens Institute and Treasure Coast Recovery.   The laboratory testing performed by National Labs is an integral part of substance abuse treatment, by showing whether and to what extent the beneficiaries are engaged in substance abuse.   It was an established custom, usage and practice between the parties, for the patients who were United Members getting treatment at The Lukens Institute and Treasure Coast Recovery to have the required laboratory testing occur either at the centers or at National Labs.   The use of outside laboratories for most and often all substance abuse testing during substance abuse treatment also is a well-established industry practice for substance abuse centers.

34.     United routinely verified that the United Members had coverage, benefits and eligibility for substance abuse treatment.   Further, if the beneficiaries needed specific authorization or other form of specific approval United would and did grant that authorization and approval.   Alternatively, United would say that no specific authorization or approval was necessary for the services to be approved for coverage by United.   This verification process is industry standard.   This process also was the established custom, usage and practice by United for informing the Plaintiffs that United (a) approved the providers rendering the services, (b) expected the Plaintiffs to bill for the services, (c) would process the bills, and (d) would pay or cause payment to be made for the medically necessary services.

### Claims Submitted by National Labs to United for Benefit Determination and Payment on behalf of United Plans

35.     For a period of approximately two and one-half years,  United processed and paid claims from the Plaintiffs without material incident, in accordance with industry standard, as well as in accordance with the custom, usage and practice established between the parties.   On or around November 15, 2015, however, United began to request unnecessary and excessive medical records and other documentation on individual claims submitted by National Labs to United prior to making benefit determinations on behalf of United Plans.  Over the next several months, National Labs provided United with thousands of pages of medical records, physician orders, lab test results, as well as descriptions of testing methodologies used and specimen type. On or around January 25, 2016, National Labs also provided United with National Labs' CLIA certificate and chargemaster (list of charges for each individual lab test).

36.     On or around February 3, 2016, after receiving no response from United and few if any payments, National Labs contacted United regarding the status of the unprocessed claims as to which United had requested additional information and for which National Labs had

provided information, including medical records.  United informed National Labs that it would respond within 10 days.

37.     On or around March 9, 2016, United notified National Labs that all National Labs claims had a payment hold or "flag," and a series of National Labs claims were met with a request for additional information.  It has become apparent that after this "flag" had been placed on all National Labs claims, all claims automatically were placed in a "pended" status, and simply not processed by United.  It also has become apparent that once this "flag" was placed, United failed and refused to process any claims submitted by Plaintiffs, under the pretense that additional documents were required, regardless of whether or not those documents were, in fact, submitted with the claim, or otherwise.

38.     National Labs contacted United over the next few days to determine what information was needed to process the claims, but received no substantive response.

39.     On or around May 19, 2016, United and National Labs participated in a WebEx conference to discuss the allegedly missing documentation that was causing United to "flag" the claims and not process or pay them, so that National Labs could provide the allegedly missing information, and resolve the backlog of claims not being adjudicated for benefits and payment. The same day, National Labs faxed the information requested by United during the WebEx conference, and contacted United on the next steps.  United proposed to conduct a limited clinical review of the medical records submitted on a representative sample of claims.  This proposal was advanced by United to be in lieu of National Lab's submission of information for, and United's review of, the thousands of unprocessed claims, and any claims that were previously denied based on the alleged lack of this material.  United requested that National Labs not provide any additional medical records beyond this proposed sample due to the burden it

would place on the Parties.  A few days later, Carolyn Ham, the United counsel who had proposed the sampling process, informed National Labs that she was being terminated effective on or around June 1, 2016.

40.     On or around June 9, 2016, National Labs was connected by United with new counsel for United, Adam Easterday.  On or around June 14, 2016, National Labs provided Mr. Easterday with the Parties' prior communications regarding the claims sampling process that was developed by United.

41.     On or around June 22, 2016, United requested additional licensure information and National Labs provided the requested licensure information the following day.

42.     On or around July 1, 2016, United's "Special Investigations" unit sent letters advising National Labs of new procedures for claims submitted as of July 18, 2016.  Specifically, United stated that all claims submitted on or after July 18, 2016, "must include medical records/labs results related to the claim, as well as the full contact information for the ordering physician, in order for the claim to be considered for benefits."  United's letter also stated that the information requested was necessary to "evaluate whether a claim is payable and the amount payable" under the "Proof of Loss" provisions of the insured's insurance contract.  This was a change from the prior practices and the industry standard for coverage for the services at issue here.

43.     On or around July 27, 2016, National Labs and United conducted a conference call.  United still had not communicated to National Labs any information regarding the prior agreement to audit a sampling of claims so that the sampling could proceed.

44.     On or around August 11, 2016, National Labs requested an update as to when United would identify the sample claims ("Sample Claims") and specific records United needed

to analyze the Sample Claims.  United indicated it still was awaiting the sampled records request from United's Payment Integrity Group.

45.     On or around October 14, 2016, United finally provided National Labs with some information on the proposed sample of United Plan claims, but such information was insufficient for National Labs to identify the proposed sample claims.  United also requested additional information from National Labs, but contained insufficient information to allow National Labs to identify the records requested.   Accordingly, National Labs requested United clarify the additional records needed.

46.     On or around December 14, 2016, after having suggested the claims sampling process back in May, United finally provided an updated file that identified approximately 20 claims selected for sampling, and a description of the records needed to initiate the clinical review of the Sample Claims.   A few days after receiving United's request, on or around December 20, 2016, National Labs provided the requested medical records to United.

47.     Thereafter, National Labs contacted United several times in late December 2016 and January 2017 to determine the status of United's review of the medical records provided on the Sample Claims.  On or around March 1, 2017, United finally provided their findings on the Sample Claims to National Labs.   But United's findings only addressed administrative/ documentation issues.  United provided no findings to Plaintiffs regarding the medical necessity or clinical appropriateness of the services provided.

48.     Prior to receiving feedback from United on the Sample Claims, National Labs engaged Andrea Barthwell, MD, DFASM, to independently assess the medical necessity of the lab tests performed.  Dr. Barthwell is a national expert in substance use disorder services, including the use of presumptive, definitive and confirmatory lab testing.  Dr. Barthwell

conducted a clinical review of the Sample Claims, which included reviewing the medical records requested by United, and reviewing United's policies regarding the lab testing.

49.     On or around April 10, 2017, National Labs and United conducted a conference via WebEx to discuss United's clinical review of the Sample Claims, and next steps to remove the "flag" from National Labs, so that United would begin processing and paying insured claims and/or making benefit determinations on past and future claims.  Dr. Barthwell attended the conference and was prepared to discuss her clinical review of all of the Sample Claims.  But United was unprepared to discuss the Sample Claims at the conference, and instead communicated to National Labs, for the first time, that United had not conducted a clinical review of the Sample Claims after all.  Instead, the United representatives stated that United was unaware of any sampling of records, had "reviewed" thousands of previously submitted records, needed more "administrative" documents to proceed, and rescheduled the WebEx conference for April 21, 2017.

50.     In the follow-up conference that took place on or around April 21, 2017 between United and National Labs, United again did not provide any feedback on the Sample Claims. Dr. Barthwell attended the conference call at the request of National Labs and provided her overall findings to United on the Sample Claims.  Dr. Barthwell also provided information regarding industry and government standards for the presumptive, definitive and confirmatory testing.  Dr. Barthwell offered to provide United her summary review and additional clinical literature for review by United.  On or around April 28, 2017, National Labs submitted the additional information requested by United at the prior conferences and documentation from Dr. Barthwell's summary review of the Sample Claims.

51.     By 5-page letter dated May 15, 2017, counsel for Plaintiffs contacted United about the on-going dispute, summarized the preceding factual background, and requested resolution of the outstanding audits via release and payment of pending claims.

52.     On or around May 26, 2017, United completed its review of the Sample Claims and presented a spreadsheet of its findings to National Labs.

53.     By 1-page letter dated June 26, 2017, United asserted that it has completed a "full and fair review of all claims" and has "adjudicated those claims according to its reimbursement policies."  United did not acknowledge the volume of claims in "pending" status, including those for which supplemental documents were provided prior to United's instruction to cease supplementation in light of the agreement for the Parties to instead review the Sample Claims, and refused to issue any payment.

54.     United never has communicated to National Labs their findings with respect to the medical necessity or clinical appropriateness of the Sample Claims – instead only reverting to more generic "documentation" and "administrative" issues.  To date, United has refused to adjudicate benefits for approximately 80,000 medically necessary claims submitted by National Labs, and issued no payment for these claims, despite the fact that these services were covered under the Member's health coverage or health insurance plan.

55.     In almost all cases, after the issuance of this June 26, 2017 letter, United has held Plaintiffs' claims submissions in limbo, without allowing or denying the benefits.  United has engaged in tactics of universally refusing to review information provided, refusing to provide a fair review of the Sample Claims meant to serve as a representative example of unpaid and unprocessed claims, using "requests for additional information" as a pretense for improperly avoiding United's processing of claims – in many cases, regardless of Plaintiffs already having

submitted the requested information. United used these tactics in order to evade, and ultimately fail to perform, United's obligations under ERISA regulations and Florida law, where applicable, to timely process claims and provide adequate notice of benefits determinations. United's continuous course of conduct is intended to withhold all payments from Plaintiffs once the United "flag" was placed on Plaintiffs' claims, without ever fully processing the claims, and without providing reasonable claims procedures.

### *Claims Submitted by Plaintiffs Lukens Institute and Treasure Coast Recovery for Benefit Determination and Payment by United on behalf of United Plans*

56.     In late 2015 and early 2016, United started conducting post-payment audits on The Lukens Institute and Treasure Coast Recovery claims submitted in 2014 and 2015, which included claims for clinical treatment and presumptive lab tests. United requested a multitude of information that is not typically requested of similarly situated providers for processing these types of claims, including progress notes, medication lists, testing results, specialist referrals, superbills, manufacturer and model information for testing equipment, and other information.

57.     On or around July 2016, United stopped making benefits determinations, and stopped causing payment to issue, on claims for clinical treatment and lab tests provided at The Lukens Institute and Treasure Coast Recovery. Thereafter, The Lukens Institute and Treasure Coast Recovery learned that their claims were also "flagged" for review, and that no submitted claims had been processed or adjudicated since March 2016.

58.     In early 2017, The Lukens Institute and Treasure Coast Recovery began to submit medical records with claims for clinical treatment and/or the presumptive testing in an effort to ensure United would adjudicate benefits and pay the amount owing on the claims.

59.     By 5-page letter dated May 15, 2017, counsel for Plaintiffs contacted United about the ongoing dispute, summarized the preceding factual background, and requested

resolution of the outstanding audits via release of the claims' flagged status, and for United to process and pay the "pended" claims.

60.     By 1-page letter dated June 26, 2017, United responded to Plaintiffs, asserting that it has completed a "full and fair review of all claims" and has "adjudicated those claims according to its reimbursement policies."  United did not acknowledge the volume of claims in "pending" status that never were fully processed, and refused to issue any payment.  The term "pended" in this context became a euphemism for United placing the claims in limbo, and not doing the work required to process or pay any of these claims.

61.     To date, United has refused to process and pay the benefits owed on thousands of covered, medically necessary claims submitted by Plaintiffs Lukens Institute and Treasure Coast Recovery.  United has not explained why it has refused to process or pay for these services that were medically necessary and properly provided. United has undertaken the same conduct of flagging Lukens Institute and Treasure Coast Recovery's claims, and refusing to follow appropriate claims processing procedures and using the above tactics in order to evade United's responsibility under ERISA regulations and Florida law, where applicable, and ultimately fail to timely process claims and provide adequate notice of benefits determinations as to each individual claim.  United's continuous course of conduct is intended to withhold all payments from Plaintiffs once the United "flag" was placed on Plaintiffs' claims.

### *Identification of Patient Bills at Issue*

62.     United is in possession of the information needed to identify the claims at issue in this lawsuit and that it has refused to pay. Nonetheless, the Plaintiffs have included Exhibit A-1 through A-6 which provides specific data points for the ready identification of the claims that are presently known to the Plaintiffs and at issue in this lawsuit. Exhibit A-1 through A-6 is sealed in

the public court file because it contains protected health information. Plaintiffs will provide United a copy of this spreadsheet upon request, and will provide updated lists to United as this matter proceeds and as warranted by continued non-payment of claims.

## V.    CAUSES OF ACTION

### COUNT I
### FAILURE TO PROVIDE BENEFITS UNDER ERISA PLANS
### (ERISA Section 1132(a)(1)(B))

63.    The allegations set forth in paragraphs 1-61 above are incorporated by reference as is fully set forth herein.

64.    This claim is alleged by Plaintiffs for relief in connection with claims for treatment rendered to patients covered by a health benefits plan governed by ERISA.

65.    This is a claim to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B).  ERISA allows a participant or beneficiary covered by a welfare benefit plan to sue to "recover benefits due . . . under the terms of his plan, to enforce rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

66.    Plaintiffs are the assignees of health care benefits provided to United for Members enrolled in ERISA plans and are therefore entitled to recover benefits due under the terms of United Member plans in their capacity as assignees of the United Members.  Healthcare providers who are beneficiaries pursuant to assignments have standing to assert the claims of their assignors against health plans.

67.    ERISA authorizes actions under 29 U.S.C. § 1132(a)(1)(B) to be brought against the ERISA plans' administrators.  Plaintiffs are informed and believe that United insures, sponsors, funds, serves as the designated plan administrators and/or serves as the named plan administrator's "designee," for the various ERISA health plans at issue.  Plaintiffs further are

informed and believe that United functions as a *de facto* plan administrator for the claims at issue whether or not United has been formally designated as the plan administrator. Plaintiffs are informed and believe that United has provided plan documents to participants, received benefit claims, and whether or not Plaintiffs have fulfilled their required duties as to the claims at issue in this action, have evaluated and processed other claims for those participants, reviewed the terms of the plans, made initial benefit determinations, made and administered benefit payments, and handled appeals of benefit determinations.

68.     On information and belief, United's plans provide that United will reimburse medically necessary, Covered Services rendered by Plaintiffs at specified levels. By using the above-described tactics to delay and ultimately avoid paying claims, and otherwise failing to cover the costs of Plaintiffs' medically necessary Covered Services provided to United for its Members, United has failed to process and pay according to the terms of the United Plans.

69.     United has violated ERISA's "full and fair review" requirements, and have failed to provide adequate notice of any benefits determination. 29 U.S.C. § 1133. United has failed to comply with its procedural obligations under ERISA to issue notice in conformance with 29 U.S.C. § 1133 as implemented by 29 C.F.R. 2560.503-1. Specifically, under 29 C.F.R. § 2560.503-1(g), they were required to do each of the following:

> . . . provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant –
>
> (i)     The specific reason or reasons for the adverse determination;
>
> (ii)    Reference to the specific plan provisions on which the determination is based;

(iii)    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv)    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v)    In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,

(A)    If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

(B)    If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

(vi)    In the case of an adverse benefit determination by a group health plan concerning a claim involving urgent care, a description of the expedited review process applicable to such claims.

70.    Strict compliance with these requirements is now necessary, and only *de minimis* errors will be excused.  29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).  United's errors here were far from *de minimis*.[1]

71.    United failed its procedural, substantive, and timing obligations when it "flagged" and refused to process all of Plaintiffs' submitted claims, issuing requests for additional

---

[1]"*De minimis*" errors are ones that (i) cause no prejudice or harm, (ii) were for good cause, (iii) due to matters beyond the plan's control, (iv) occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant, and (v) is not part of a pattern or practice of violations by the plan.  29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(2).

information that was not reasonably necessary and regardless of context or circumstance, and regardless of the documentation already submitted with those claims.  Upon Plaintiffs' insistence that United remove this "flag," United insisted on a hold of processing of any and all submitted claims, so that United could perform a review of "Sample Claims" meant to be representative of the "pended" claims.  But then United refused to consider medical records submitted even for the Sample Claims, and concluded its so-called "review" without consideration of Plaintiffs' submitted documentation.   United's conduct has rendered it impossible for claims to be adjudicated, and for benefits determinations to be made, within the time frame required under ERISA.  United failed to individually fully process and adjudicate each of the individual claims at issue.  Moreover, for those few claims where benefits determinations were issued, United has refused to provide any reference to specific plan provisions, and failed to provide a description of the plan's review procedures and time limits applicable to such procedures.

72.    United has engaged in tactics of universally refusing to review information provided, refusing to provide a full and fair review of the Sample Claims meant to serve as a representative example of unpaid and unprocessed claims, and using "requests for additional information" – in many cases, regardless of Plaintiffs' prior submission of the requested information – as a pretense for improperly delaying and avoiding United's processing of claims. United's use of such tactics has rendered it impossible for United to timely process and pay claims, and United has used the above tactics in order to evade, and ultimately fail, in fulfilling United's responsibility under ERISA regulations to timely process and pay claims.

73.    United's continuous course of conduct appears to have been intended to avoid processing and paying claims to Plaintiffs once the United's "flag" was placed on Plaintiffs' claims.

74.     Plaintiffs have exhausted or by law are deemed to have exhausted their administrative remedies under the ERISA plans at issue.  To the extent that United has placed the claims at issue in "pending" status, United has held Plaintiffs' claims submissions in limbo without processing those claims, under the pretense that "additional information was required," whether or not such additional information was previously, or subsequently provided to United. United also insisted on a review of "Sample Claims" in lieu of Plaintiffs' further submission of documents, and summarily denied coverage without consideration of Plaintiffs' submitted documentation for those Sample Claims.  Upon conclusion of this review, United made clear in its June 26, 2017 letter that it refuses to fully and fairly adjudicate all claims still "pended." Simply put, United has not established and/or maintained reasonable claims procedures for these unprocessed and unpaid claims.

75.     Plaintiffs have made all reasonable efforts to have United adjudicate its claims, and have provided United with thousands of pages of medical records, none of which United will even consider for determining coverage.  This notwithstanding, United has refused to process and pay these claims.  United's refusal to determine benefits on these claims has left Plaintiffs with no reasonable administrative options.  For the majority of the claims, United issued no adverse benefit determinations that would even afford an opportunity to appeal.  For these claims, as well as for the few claims that were denied, the Parties agreed to a consensual process for mutual review, consisting of review of the Sample Claims, as discussed above.  But United never performed a full and fair review of even the Sample Claims.

76.     United failed to process Plaintiffs' claims in a manner consistent with the ERISA regulations.  These failures deprive Plaintiffs of the information and due process necessary to effectively pursue or appeal United's arbitrary denials.  Because of these failures by United, any

obligation that Plaintiff may have had to pursue further administrative remedies are "deemed exhausted" under the ERISA regulations at 29 C.F.R. § 2560.503-1.  Section 2560.503-1(f) requires that plan administrators notify Plaintiffs of adverse benefit determinations within 30 days of receipt of a claim for group health coverage.  United was required to render adverse benefit determinations within this allowed time frame.  However, United failed to do so, and implemented processes and procedures that made it impossible for United to do so; and in many cases, failed to render an adverse benefit determination at all.  United also has failed to provide the information required under Section 2560.503-1(g) for each adverse determination, where such determinations were made, to allow beneficiaries and participants sufficient information to appeal a claim.

77.    United's continuous course of conduct is intended to withhold all payment from Plaintiffs.  Given that United had demonstrably determined not to pay benefits, no matter what actions were taken by Plaintiffs, additional pursuit or appeals would have been futile.

78.    United's conduct in breach of its ERISA plans has denied Plaintiffs benefits to which they are entitled as assignees.  Under the terms of the United Plans, United Members are entitled to a benefit consisting of coverage for medically necessary services.  This coverage was of value to United Plan Members and was purchased by them, directly or indirectly, with their cash, salaries or as an employee benefit.

79.    Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs as assignees of United Members are entitled to recover benefits due to them under the terms of the United Plans and can enforce and clarify their rights under the terms of such plans.

80.     **WHEREFORE**, Plaintiffs respectfully request this Court enter judgment on

Count I against United and award Plaintiffs payments for all benefits due and owing under

ERISA plans pursuant to 29 U.S.C. § 1132(a)(1)(B), along with pre- and post-judgment interest,

attorneys' fees, and such other relief as the Court deems just and equitable.

## COUNT II
## <u>FAILURE TO MAINTAIN REASONABLE CLAIMS PROCEDURES</u>
## <u>FOR ERISA PLANS(ERISA § 1132(a)(3))</u>

81.     The allegations set forth in paragraphs 1-61 above are incorporated by reference

as is fully set forth herein.

82.     Plaintiffs are the assignees of health care benefits provided to United for its

Members enrolled in ERISA plans and, as assignees, challenge United's failure to maintain

reasonable claims procedures for its ERISA plans.

83.     ERISA requires plans to "establish and maintain reasonable procedures governing

the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit

determinations." 29 C.F.R. § 2560.503-1(b).

84.     If a post-service claim for group health benefits is to be wholly or partially

denied, the plan is to notify the claimant of the adverse determination "within a reasonable

period of time, but not later than 30 days after receipt of the claim." This period only "may be

extended one time by the plan for up to 15 days, provided that the plan administrator both

determines that such an extension is necessary due to matters beyond the control of the plan and

notifies the claimant, prior to the expiration of the initial 30-day period, of the circumstances

requiring the extension of time and the date by which the plan expects to render a decision. If

such an extension is necessary due to a failure of the claimant to submit the information

necessary to decide the claim, the notice of extension shall specifically describe the required

information, and the claimant shall be afforded at least 45 days from receipt of the notice within

which to provide the specified information."  29 C.F.R. § 2560.503-1(f)(2).  United consistently and systemically failed to meet these standards.

85.     Plaintiffs have submitted thousands of claims for medically necessary Covered Services, requesting benefits due and owing under the applicable United Plans.  In support and at United's request, Plaintiffs also have submitted thousands of pages of medical records.

86.     Yet United has placed a "flag" on claims submitted by the Plaintiffs, resulting in United refusing to administer, process or pay claims for the full benefit amounts due and owing under the United Plan terms.

87.     Despite repeated attempts by Plaintiffs to engage with United towards resolution of the outstanding claims for Covered Services, United has moved well beyond the required benefit determination timeframes.

88.     By failing to either approve or deny the claims, instead holding the claims in a pending limbo status, and instituting claims review procedures that rendered it virtually impossible for United to comply with ERISA regulations regarding the timely processing and payment of claims, United has failed to maintain a reasonable claims processing procedure, in violation of 29 C.F.R. §§ 2560.503-1(b), 2560.503-1(f)(1), and 2560.503-1(f)(2).

89.     United's Members who are participants in ERISA-governed health benefit plans, and, in turn, Plaintiffs as assignees, are entitled to appropriate equitable relief under 29 U.S.C. § 1132(a)(3) to redress the violations of, and enforce the claims processing procedures in, 29 C.F.R. § 2560.503-1(b), including an injunction requiring United to comply with its duties and obligations under ERISA, including promptly processing claims from Plaintiffs, and properly calculating past and future benefits without resort to the flawed and improper procedures that have placed these claims in limbo.

90.     **WHEREFORE**, Plaintiffs respectfully request this Court enter judgment on Count II against United and grant an appropriate equitable remedy pursuant to 29 U.S.C. § 1132(a)(3) for United's failure to maintain reasonable claims procedures for the ERISA plans, along with pre-and post-judgment interest, attorneys' fees, and such other relief as the Court deems just and equitable.

## COUNT III
## BREACH OF IMPLIED-IN-FACT CONTRACT

91.     The allegations set forth in paragraphs  1, 3-22, and 29-61 above, to the extent not inconsistent with paragraph 91 below, are incorporated by reference as if fully set forth herein.

92.     This breach of implied-in-fact contract cause of action is pursued based on Plaintiffs' separate and independent rights against United under state law, is not based on any assignment of benefits from United's Members, and is asserted as to non-ERISA plans only.

93.     Plaintiffs and United established a routine course of dealing for the admission and treatment by Plaintiffs of  United's Members, which includes direct communications with United for verifying benefit eligibility and coverage, for obtaining any requisite pre-authorizations and approvals for specified treatment at the relevant level of care, through prospective and concurrent reviews, submitting claims pursuant to standardized claim forms, and engaging in cooperative follow-up collection efforts. Plaintiffs conduct a clinical assessment and develop an initial treatment plan consistent with the services required by United's Members.

94.     Plaintiffs communicate directly with United, or their designated agents, to verify eligibility for and availability of coverage and to contract for the treatment services, which includes, among other things, the types of services Plaintiffs provided here, and obtaining any requisite pre-authorizations and approvals for treatment at the relevant level of care through prospective and concurrent reviews.

95.    The initial verification of coverage and eligibility process is an industry standard mechanism to make an offer to a health plan to provide treatment, including for the type of treatment at issue here.  The industry standard mechanism for United to accept that offer are United's words and conduct during the verification process through which United verified coverage for all of the services at issue here.

96.    The price offered for the clinical services provided by Plaintiffs is assigned according to well established rates, which United knew in advance of verifying coverage based on prior experience of receiving claims from Plaintiffs for parallel services.

97.    By verifying coverage, and where needed pre-authorizing or otherwise approving Plaintiffs to provide the specified services, at the specified level of care, for a specified length of stay, with full knowledge of Plaintiffs' usual and customary charges for that service at that level of care, United, through their words and conduct, accepted Plaintiffs' offer, and agreed to pay Plaintiffs the set price for their services, which are their usual and customary charges.

98.    Plaintiffs have provided the treatment verified, in accordance with the implied-in-fact contracts created by Plaintiffs' offer and United's acceptance.  Plaintiffs are entitled to be paid based on their usual and customary charges, which charges are consistent with those of other similar providers in Florida, and are fair and reasonable.

99.    United breached these implied-in-fact contracts with Plaintiffs by failing to reimburse Plaintiffs based on their usual and customary charges, or for that matter, failing to reimburse Plaintiffs at all.

100.   As a result of United's breaches, Plaintiffs have been damaged, which damages will continue to accrue as a result of United's continuing breaches through the date of trial, and for which Plaintiffs seek damages to the full extent permitted by applicable law.

101.    **WHEREFORE**, Plaintiffs respectfully request this Court enter judgment on Count III against United and award Plaintiffs compensatory damages, together with pre- and post-judgment interest, and such other relief as the Court deems just and equitable.

## COUNT IV
## BREACH OF IMPLIED-IN-LAW CONTRACT
## (UNJUST ENRICHMENT)

102.    The allegations set forth in paragraphs  1, 3-22, and 29-61 above, to the extent not inconsistent with paragraph 102 below, are incorporated by reference as if fully set forth herein.

103.    This unjust enrichment cause of action is pursued based on Plaintiffs' separate and independent rights against United under state law, is not based on any assignment of benefits from United's Members, and is asserted as to non-ERISA plans only.

104.    Plaintiffs conferred a direct benefit on and for United by providing valuable treatment and laboratory services to United for its Members with the express knowledge, verification, and where needed authorization or approval, of United, or through the established course of dealing as the party responsible to pay for the services.

105.    As the responsible party for providing access to health services and for payment, United derived a direct benefit from Plaintiffs' provision of such treatment services to United for its Members, because Plaintiffs provide the health care services by which United fulfill their obligations to their Members.

106.    When Plaintiffs provided services to United for its Members, United received the benefit of having their obligations to its Members discharged. Namely, these obligations are the arrangement of and payment for these Members' health care services, who pay premiums to United to arrange for and pay for such services.

107.    United voluntarily accepted, retained, and enjoyed, and continues to accept, retain, and enjoy the benefits conferred by Plaintiffs, at Plaintiffs' expense, with the knowledge that Plaintiffs expect to be paid the reasonable value of their services, *i.e.* their usual and customary charges, and are entitled to payment for their services as a result of the express verification of those benefits, and where needed, pre-authorization or approval of the services, and/or through course of dealing and/or other responsibilities of United for the management and care of its Members.

108.    United has failed to pay the reasonable value of the treatment and laboratory services provided.  In this way, United retained funds for itself and the plans it administers that otherwise would be paid to Plaintiffs for the services rendered.  As a result, United currently has retained an unjustified windfall.

109.    By underpaying Plaintiffs' claims for services, United has been unjustly enriched.

110.    Plaintiffs seek compensatory damages in amounts which will continue to accrue as a result of the continuing breaches through the date of trial and for which Plaintiffs intend to seek as damages as permitted by applicable law.

111.    **WHEREFORE**, Plaintiffs respectfully requests this Court enter judgment on Count IV against United and award Plaintiffs compensatory damages together with pre- and post-judgment interest, and such other relief as the Court deems just and equitable.

**COUNT V**
**BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARIES**

112.    The allegations set forth in paragraphs 1, 3-22, 23, and 29-61 above are incorporated by reference as if fully set forth herein.

113.    This third-party beneficiary cause of action is pursued based on Plaintiffs' separate and independent rights against United under state law, as intended third-party

beneficiaries of the written plan agreements between United and United's Members, not based on any assignment of benefits from United's Members, and only applies to claims for services rendered to United for its Members who do not have a plan agreement governed by ERISA.

114.     United entered into written plan agreements with its Members to timely and reasonably pay for the provision of medically necessary health care services provided to the Members.

115.     Plaintiffs are intended third-party beneficiaries of the agreements between United and United's Members.  Indeed, the plan agreements between United and United's Members exist primarily to provide for payment of claims from health care providers, including without limitation, claims from Plaintiffs.  United's Members only have coverage under a United Plan agreement for claims from health care providers, such as Plaintiffs.

116.     United has breached its agreements with its Members to timely and reasonably process, adjudicate, and pay claims for services rendered by Plaintiffs. Plaintiffs have suffered damages as a consequence of the United's breaches, in an amount to be proved at trial.

117.     **WHEREFORE**, Plaintiffs respectfully request this Court enter judgment on Count V against United and award Plaintiff compensatory damages, together with pre- and post-judgment interest, and such other relief as the Court deems just and equitable.

## COUNT VI
## DECLARATORY RELIEF

118.     The allegations set forth in paragraphs 1, 3-22, 23, and 29-61 are incorporated by reference as if fully set forth herein.

119.     Plaintiffs have provided and continue to provide substance use disorder and related laboratory and treatment services to United's Members with full knowledge, verification and  where needed authorization of United, of the terms and conditions upon which Plaintiffs

will provide care to United's Members, including the type of services and prices for those services.

120.     Despite knowledge, verification of coverage for Plaintiffs' Services, and authorizing where needed or otherwise approving Plaintiffs to provide services to United's Members, United has refused to process the Plaintiffs' claims and withheld reimbursements due and owing to the Plaintiffs.

121.     United has failed to pay or dispute the claims for covered services within the timeframes required by Florida statutory law, including Fla. Stat. §§ 641.3154, 641.3155(3)-(4), 627.613, 627.6131(4)-(5), 627.64194(4) and 627.64194.

122.     United appears to believe that it need not comply with the requirements of Florida statutory law for any of the claims covered by state law, as reflected by United's conduct in failing and refusing to process or pay in accordance with these laws, and United setting up processes that appear designed to have no ability to comply with the state law obligations for claims covered by state law.

123.     A justiciable controversy therefore exists between the parties regarding the above-described contracts, such that the parties' legal rights and obligations regarding the treatment services Plaintiffs have provided and continue to provide to United merits declaratory relief at this time.

124.     **WHEREFORE**, Plaintiffs respectfully request this Court enter judgment against United and declare that i) United has engaged in a practice of withholding claims adjudication and payment that is in violation of FLA. STAT. §§ 641.3154, 641.3155(3)-(4), 627.613, 627.6131(4)-(5), and 627.64194, and ii) that United must prospectively receive, process, and pay

or dispute Plaintiffs' claims as prescribed by FLA. STAT. §§ 641.3154, 641.3155(3)-(4), 627.613, 627.6131(4)-(5), and 627.64194.

## VI.    RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that the Court award the following relief:

A.    Award payments for all benefits due and owing under ERISA plans pursuant to 29 U.S.C. § 1132(a)(1)(B);

B.    Grant an appropriate equitable remedy pursuant to 29 U.S.C. § 1132(a)(3) for United's failure to maintain reasonable claims procedures for the ERISA plans;

C.    Enforce United's implied-in-fact and implied-in-law promises to reimburse Plaintiffs for medically necessary, covered cervices;

D.    Award payments for all benefits due and owing under the United Plans for medically necessary, covered services provided to United for its Members;

E.    Enter a judgment awarding Plaintiffs their costs and reasonable attorneys' fees incurred in this action, to the full extent permitted under the law, including, without limitation, attorneys' fees allowed under ERISA;

F.    Award Plaintiffs pre-judgment and post-judgment interest to the full extent permitted by law;

G.    Issue a permanent injunction requiring United to timely process Plaintiffs' claims for services rendered to United for its Members, and where those services are medically necessary covered benefits, timely and accurately pay those claims;

H.    Declare that i) United has engaged in a practice of withholding claims adjudication and payment that is in violation of FLA. STAT. §§ 641.3154, 641.3155(3)-(4), 627.613, 627.6131(4)-(5), 627.64194, and ii) that United must prospectively receive, process,

Case No. 9:17-cv-81178-DMM

and pay or dispute Plaintiffs' claims as prescribed by FLA. STAT. §§ 641.3154, 641.3155(3)-(4), 627.613, 627.6131(4)-(5), 627.64194. and

I.     Award Plaintiffs such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable as a matter of right.

Date: November 27, 2017                       Respectfully submitted,

                                              **VER PLOEG & LUMPKIN, P.A.**


                                              /s/ Jason S. Mazer
                                              **Jason S. Mazer**
                                              Florida Bar No. 0149871
                                              jmazer@vpl-law.com
                                              **Anthony S. Hearn**
                                              ahearn@vpl-law.com
                                              Florida Bar No.  102302
                                              100 S.E. 2nd Street, 30th Floor
                                              Miami, Florida 33131
                                              Telephone:  (305) 577-3996
                                              Facsimile:  (305) 577-3558

                                              and

                                              **Glenn E. Solomon***
                                              gsolomon@health-law.com
                                              **Jonathan H. Shin***
                                              jshin@health-law.com
                                              **HOOPER, LUNDY & BOOKMAN, PC**
                                              Los Angeles
                                              1875 Century Park East, Suite 1600
                                              Los Angeles, CA 90067
                                              Tel: 310-551-8179

                                              *Counsel for Plaintiffs*

*Admitted Pro Hac Vice*

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on November 27, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served via Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing listed on the Service List below.

                                 /s/ *Jason S. Mazer*
                                 **Jason S. Mazer**
                                 Florida Bar No. 0149871

                                 *Counsel for Plaintiffs*

Case No. 9:17-cv-81178-DMM

## SERVICE LIST

David I. Spector, Esq.
Sandra L. Heller, Esq.
Irene A. Bassel Frick, Esq.
Darcie A. Thompson, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313
david.spector@akerman.com
sandra.heller@akerman.com
irene.bassel@akerman.com
darcie.thompson@akerman.com

*Attorneys for Defendants, Unitedhealth
Group, Inc.; United, Healthcare Services, Inc.;
Unitedhealthcare Insurance Company, Inc.;
United Healthcare Services, LLC; Optum,
Inc.; and Golden Rule Insurance Company*