UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| NATIONAL LABORATORIES, LLC, THE LUKENS INSTITUTE, LLC, TREASURE COAST RECOVERY, LLC<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE SERVICES, INC., UNITEDHEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICES LLC, OPTUM, INC. and GOLDEN RULE INSURANCE COMPANY<br><br>　　　Defendants and Counter-Plaintiffs.<br><br>　v.<br><br>NATIONAL LABORATORIES, LLC, THE LUKENS INSTITUTE, LLC, TREASURE COAST RECOVERY, LLC, TREATMENT MANAGEMENT COMPANY, LLC, WELLNESS COUNSELING AND RESIDENTIAL DETOXIFICATION, LLC, SUNSHINE DOCTORS GROUP, LLC, and AID IN RECOVERY, LLC<br><br>　　　Counter-Defendants. | )<br>)<br>)<br>)<br>)<br>)　Case No. 9:17-cv-81178-DMM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS/COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' AMENDED COUNTERCLAIM, AND PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSES

Plaintiffs National Laboratories, LLC ("National Labs"), The Lukens Institute, LLC ("Lukens") and Treasure Coast Recovery, LLC ("Treasure Coast") (collectively, "Plaintiffs"), and Third-Party Counter-Defendants Treatment Management Company, LLC ("TMC"), Wellness Counseling and Residential Detoxification, LLC ("Wellness"), Sunshine Doctors Group, LLC ("Sunshine Doctors"), and Aid in Recovery, LLC ("AIR") (collectively with Plaintiffs, "Counter-Defendants" or the "TMC Entities"), pursuant to Fed. R. Civ. P. 56, submit this Motion for

Summary Judgment, on Defendants' Amended Counterclaim ("Counterclaim") [ECF No. 158] and Defendants' Original Answer and Defenses [ECF No. 123], and state as follows:

## I.   INTRODUCTION

This case was, and continues to be, a payment dispute between the TMC Entities and United. The TMC Facilities provided life-saving substance abuse treatment to United's members; United flatly, and unlawfully, refused to pay those claims. The TMC Entities attempted to amicably resolve this dispute short of litigation without success, resulting in this lawsuit. In the lawsuit, plaintiffs have exposed United's "Florida initiative," in which United targeted for "audit" intervention high-volume out of network substance abuse providers, without a shred of evidence of wrongdoing. In response, United's litigation strategy was to file counterclaims accusing the TMC facilities of being criminals—without *any* evidence to support this inflammatory claim.

Summary judgment should be entered against United on each claim. First, United's damages theory for its FDUTPA and Unjust Enrichment claims are entirely contrary to Florida law. United's theory that it is entitled to a complete recoupment of all benefits it ever paid for services even if validly and diligently rendered by the TMC Entities, preauthorized, reviewed, and found covered and medically necessary is in no way the measure of "actual damages" under FDUTPA, or the measure of restitution for the amount in which the TMC Entities were unjustly enriched. Similarly, United's theory that it is entitled to such wholesale recoupment of any and all benefits because of alleged unlawful "patient brokering" has nothing to do with the services at issue, and has been expressly rejected by the Southern District Court of Florida.

Indeed, United cannot show it suffered any "actual damages" caused by purported "patient brokering" or "deceptive" drug testing and billing, or that United "unjustly enriched" the TMC Entities as a result. For the few claims that United actually paid, it did so with its eyes wide open, pre-authorizing services and then determining coverage and paying claims that were submitted with every material claim detail. United cannot show evidence to contradict this.

United also cannot prove liability for its FDUTPA and Unjust Enrichment claims. Florida precedent establishes that United, an insurance company, is not a "consumer" for FDUTPA purposes, and thus has no standing to bring this claim. In addition, United cannot show that Counter-Defendants committed any "objectively deceptive act" under FDUTPA when United received complete claims reflecting the frequency, manner and billed charge for services before determining whether, and how much to pay. As for United's claim that Counter-Defendants violated

FDUTPA based on alleged "patient brokering," this is a gross mischaracterization of the TMC Facilities' business structure. United knows full well that the TMC facilities' usage of a call center, under the TMC umbrella, to screen potential patients for eligibility, verify insurance benefits, and coordinate appropriate care, is entirely appropriate and falls far outside Florida patient brokering law. United cannot produce evidence to the contrary, because such evidence does not exist.

United's unjust enrichment claim, based on the same alleged "deceptive practice" and "patient brokering," fails for the same reasons. In addition, under Florida's voluntary payment doctrine, United cannot recover restitution having paid for services that were rendered with full knowledge of the facts. The TMC facilities provided services to United members and were appropriately compensated by United in the small number of cases where United actually paid.

Summary judgment should be entered on the ERISA § 502(a)(3) claim as well. United cannot show that it is entitled to equitable relief under ERISA, as United cannot show that National Labs committed any wrongdoing, or violated any ERISA plan or provision by submitting bills with what United asserts was a simple coding error. Nor can United show that it maintains a confidential relationship with National Labs as required to obtain the equitable relief it seeks.

The true dispute amongst the parties involves United's nonpayment for medically necessary substance abuse claims. United's meritless counterclaims should be summarily adjudicated because they fail as a matter of law and so that the parties can focus on the actual dispute at hand.

## II.    BACKGROUND AND MATERIAL FACTS

The material facts upon which Counter-Defendants rely for this Motion are simple, and supported by the evidence. They concern the relationship between the affiliated TMC Entities, the normal and accepted business and utilization management practices of the TMC Entities, United's undisputed claims processing and audit procedures, and the nature of the claims in dispute. These material facts are set forth in full, in the Statement of Material Facts ("SMF") submitted herewith, and cited and referenced accordingly in this Motion.

On June 6, 2018, United filed its Amended Counterclaim (ECF No. 158.), which is currently the subject of a pending Motion to Dismiss (ECF No. 184). The Amended Counterclaim asserts four causes of action for (1) Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 502.201 *et seq.* ("FDUTPA") as to all Counter-Defendants; (2) Unjust Enrichment as to National Labs, Lukens, Treasure Coast, Sunshine Doctors and Wellness; (3) a Claim for Overpayment under ERISA § 502(a)(3) as to National Labs; and (4) Declaratory Relief. For the reasons set forth herein,

summary judgment should be entered for Counter-Defendants on United's Amended Counterclaim in its entirety.

### III.    LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

FRCP 56(a) permits a party to move for summary judgment or partial summary judgment for any claim or defense.  "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).  "When the non-moving party bears the burden of proof on an issue at trial," to prevail the moving party may, but "need not 'support its motion with affidavits or other similar material *negating* the opponent's claim.'"  *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000).  Instead, the moving party can "point out to the district court" "that there is an absence of evidence to support the nonmoving party's case."  *Id.*; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ("moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial").  Once the moving party makes this showing, "the burden shift[s] to the nonmoving party to designate, through affidavits or otherwise . . . , specific facts showing that there is a genuine issue for trial."  *Young v. City of Augusta ex rel. DeVaney*, 59 F.3d 1160, 1170 (11th Cir. 1995).

### IV.    ARGUMENT AND MEMORANDUM OF LAW

**A.    United Cannot Show any "Actual Damages" or that it "Unjustly Enriched" Counter-Defendants, as a Result of Alleged "Patient Brokering" or "Deception"**

As addressed below, United cannot show liability for its Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") or Unjust Enrichment causes of action.  However, United's faulty damages theory is addressed first because it reflects the one constant in United's dealings with the TMC Entities - a persistent attempt to avoid the real issue of coverage to avoid paying for any services rendered by the TMC Entities regardless of medical necessity and shift its financial burden onto its members.  United's theory of damages, that it should get full restitution of all payments it made for all services validly and diligently rendered by the TMC Entities, preauthorized, reviewed and found medically necessary by United, is contrary to any appropriate measure of damages for FDUTPA or unjust enrichment under Florida law.

The appropriate measure of damages for a FDUTPA claim is "actual damages," or "the difference in the market value of the product or service in the condition in which it was delivered

4

and its market value in the condition it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984). "Proof of actual damages is necessary to sustain a FDUTPA claim." *Dorestin*, 45 So.3d at 824.

As for a claim for equitable restitution for unjust enrichment, the proper measure is not full restitution of any and all amounts paid to the defendant, but instead restitution of a "benefit conferred and accepted, which would be unjust for Defendants to retain." *State Farm*, 278 F.Supp.3d at 1330. When a defendant gives what the plaintiff pays for, or in other words, "[w]hen a defendant gives adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Am. Safety Ins. Service, Inc. v. Griggs*, 959 So. 2d 322, 332 (Fla. 5th DCA 2007) (citing *Behm v. Cape Lumber Co.*, 834 So .2d 285, 287 (Fla. 2d DCA 2002) (party who completed performance under its contract with a third party could not be unjustly enriched by benefits conferred on the third party by the plaintiff).

Accordingly, the measure of damages for both state law causes of action is some measure of the difference of what was paid and the market value of services rendered caused by the purported wrongdoing. Yet, United seeks wholesale recoupment of all amounts it paid for services rendered by Counter-Defendants from 2014-2017 irrespective of whether the service was medically necessary or any alleged wrongdoing tainted the claim for reimbursement[1]  (*Id.* at ¶¶ 110, 245.) There is no basis for such recovery under Florida Law.

United's faulty reasoning for this gross mischaracterization of actual damages appears to be that Cross-Defendants' alleged general "deceptive and unfair trade practices" renders claims for all services ever provided to United members non-compensable.  (*Id.*). According to United, Counter-Defendants' excessive UDT and overbilling "caused United to pay or authorize payment . . . for medical services that were unauthorized, medically unnecessary, and non-compensable." (Counterclaim, ¶ 245.) Yet, United's pleading does not identify which claims it actually paid were for unauthorized or medically unnecessary services. Even if United takes issue with some claims or the TMC Entities testing practices, this does not warrant a wholesale refund of every cent United ever paid. This is even more apparent considering United seeks recoupment of benefits paid for

---

[1] Exhibits A, S and T to United's Amended Counterclaim identify every claim unpaid, partially paid, or paid by United for claims submitted for treatment, UDT and ancillary medication and physician services rendered by the TMC Facilities, National Labs, or Sunshine Doctors physicians.

treatment, even though United does not dispute that the treatment rendered for paid claims was preauthorized and medically necessary.

United also seeks complete recoupment under the theory that purported patient brokering rendered all claims "against public policy, void and non-compensable," regardless of whether the services were actually and appropriately rendered.  (ECF No. 158, ¶¶ 110, 245.)  Such a notion is in direct contradiction any calculation of "actual damages" or the fundamental basis for the doctrine of "unjust enrichment," *i.e.* recompense for an unjust benefit actually conferred.  Indeed, this very argument proposed by United has been expressly rejected by this Court.

In *State Farm Mutual Automobile Insurance Company v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F.Supp.3d 1307, 1329-30 (S.D. Fla. 2017), this Court rejected plaintiff insurer's argument "that 'it owed absolutely nothing for Defendant [provider]'s services . . . ' because 'such services are 'the product of an arrangement prohibited by Florida Statutes §§ . . . 817,505, 502.201 et. seq., and 817.234."  The Court held that "the Court does not agree that Plaintiff owed nothing for Defendants' services merely because of these violations."  *Id.*

The *State Farm* Court reasoned that when a statute, like Fla. Stat. §§ 817.505 or 817.234(7), does not "expressly provide" that "[a]ll charges or reimbursement claims made in violation of these statutes" are "noncompensable" or "unenforceable," particularly in the insurance context, violation of such statutes does not demand that Counter-Defendants are "owed nothing for [their] services." Therefore, this Court "conclude[d] that the legislature did not intend" for such complete relief" to exist here."  *Id.*  United is not entitled to the relief it seeks.

Further, summary judgment should be entered against United on FDUTPA cause of action because it cannot prove "actual damages" caused by Counter-Defendants' UDT and billing practices or any purported unlawful patient brokering, because United made its own determination as to which claims pay with knowledge of the type, frequency and billed amount for UDT.  For each claim paid by United, Counter-Defendants submitted complete claims which would indicate the service provided, the dates of service, the frequency of testing and panels tested for UDT claims, and the amount charged.  (SMF ¶ 29.)  United could have, and did request further clinical information if it felt additional information was needed, and would not have paid a claim if this information was not received.  (SMF ¶ 31.)

United paid claims only after making a determination that the services were medically necessary and covered.  And because United chose how much to pay, United cannot produce

evidence that it paid anything over the reasonable value for services rendered, or the amount called for under the patient's plan.  Even assuming *arguendo* that most of the claims submitted were for "unnecessary" services, this could cause no damages because United had access to all the information it needed to pay only those it unilaterally deemed covered and medically necessary. The bottom line is, there is no evidence or allegation that the TMC Entities did not provide the treatment and UDT for which claims were submitted, and United only paid those claims it deemed covered under the patient's plan.[2]

Similarly, United cannot prove any benefit unjustly retained by Counter-Defendants.  United agreed to pay its members and Counter-Defendants for the provision of authorized and medically necessary services.  The instant situation is no different than those in *Behm*, because it is undisputed that the Plaintiffs performed their end of the bargain, the services United authorized the Plaintiffs to perform.  *See Behm*, 834 So 2d at 287.  For claims United did pay, United chose the appropriate amount to pay for those claims under the terms of the patient's plan.  (SMF ¶ 30.)  There are no damages in unjust enrichment because United, through its members, received the services that it paid for in accordance with the patient's plan.

United's inability to prove damages is sufficient for summary judgment to be awarded in Counter-Defendants' favor on its FDUTPA and unjust enrichment causes of action.

**B.**     **Counter-Defendants  Should be Awarded Judgment on United's FDUTPA Claim**

To prevail on its FDUTPA claim, United has the burden of proving (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Beale v. Biomet, Inc.*, 492 F. Supp. 2d 1360, 1373 (S.D. Fla. 2007).  To prove deception or unfair practice, the plaintiff must either (a) show a *per se* violation, *i.e.* that the defendant violated a law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices (Fla. Stat §501.203(3)(c)), or (b) independently establish that a practice is deceptive or unfair by proving unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

---

[2] United also could not prevail on a theory of actual damages that but for "patient brokering," the patient would not have received treatment from a TMC Facility.  The individual patients were in need of care, and sought TMC for treatment, reflecting an intent to receive out of network substance abuse treatment.  If the patient did not receive treatment from TMC, the patient would have sought and received treatment from another out of network facility which would have been rendered, billed to United, processed and paid pursuant to the terms of the patient's out of network benefits all the same.  United cannot produce evidence to the contrary.

conduct of any trade or commerce. Fla. Stat. §501.204(1); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017). "Deception" occurs under FDUTPA only if there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr, Inc.*, 2008 WL 11334170 *6 (quoting *Merrill Lynch Bus. Fin. Svcs., Inc. v. Performance Machine Sys. U.S.A.*, 2005 WL 975773, *8 (S.D. Fla. 2005)). Only the deceived consumer may pursue money damages in a FDUTPA action. *Physicians Injury Care*, at *8-9 (M.D. Fla. Dec. 31, 2008).

United asserts that Counter-Defendants violated FDUTPA through a traditional deception by ordering excessive, expensive and medically unnecessary UDT. (Counterclaim, ECF No. 158, ¶ 242.b-h.). United alternatively alleges *per se* FDUTPA violations alleging that Counter-Defendants engaged in "unlawful patient brokering" in violation of Fla. Stat. § 817.505 and "insurance fraud" by "fail[ing] to engage in good faith effort[s] to collect" patient responsibility, in violation of Fla. Stat. § 817.234(7). (*Id.* at ¶¶ 242.a., i.).

Summary judgment on the FDUTPA claim is appropriate because (1) United is not a "consumer" with standing under FDUTPA; and (2) United cannot show that Counter-Defendants engaged in any "deceptive" trade practice, unlawful patient brokering, or insurance fraud.

1.     ***United is Not a Consumer, and Cannot Show Standing to Pursue Money Damages Under FDUTPA***

United alleges it is a "consumer" rather than a supplier or producer in order to obtain standing to seek money damages under FDUTPA. Only a statutory consumer may recover damages under this consumer protection statute. *State Farm*, 2008 WL 11334170 at *8-9; Fla. Stat. § 501.211(2); *Carroll v. Lowes Home Centers, Inc.*, 2014 WL 1928669 *3 (S.D. Fla. May 6, 2014) ("person" in § 501.211(2) applies only to "consumers"). Non-consumers "aggrieved," including competitors, producers, and suppliers, may only seek injunctive relief or declaratory judgment. Fla. Stat. § 501.211(1). United's standing to recover damages fails as a matter of law.

In *Physicians Injury Care Ctr*, the Court held:

> Pursuant to Florida case law, a corporation that has acted as a supplier or producer is not considered a consumer and is precluded from proceeding under FDUTPA. Intervenors maintain that Plaintiffs were acting as providers of insurance coverage, thus not acting in the capacity of a purchasing consumer under FDUTPA. This Court agrees. Plaintiffs sold insurance policies to their insureds. Once injured, the insureds sought medical treatment as consumers. The insurer is not a purchaser of goods or services, but merely a third party obligated to reimburse the patient/insured for the

cost of treatment. Thus, Plaintiffs do not qualify as a consumer within the meaning of the FDUTPA.

2008 WL 113341470 at *4. It is undisputed that for all of the alleged transactions, United acted as a provider of health care coverage. (UF, ¶ 7.)  It is the insureds that sought medical treatment as consumers from the Counter-Defendants.  United is not a purchaser of goods or services, but "merely a third party obligated to reimburse the patient/insured for the cost of treatment." *Id.* United therefore has no standing to recover damages under FDUTPA, and this alone requires that summary judgment be entered in Cross-Defendants' favor.

2. ***United Cannot Make an Evidentiary Showing that Counter-Defendants Engaged in any Traditional Deceptive or Unfair Act***

United must prove an "objective deception" which caused actual damages to United in support of its "traditional deception" theory of FDUTPA liability.  *See Democratic Republic of the Congo v. Air Capital Group, LLC*, 614 Fed. Appx. 460, 470, No 14-11243 (11th Cir. June 15, 2015); *Beale*, 492 F. Supp. 2d at 1373. United  alleges is was deceived by Counter-Defendants' excessive, expensive, and medically unnecessary UDT.[3]  (Counterclaim, ECF No. 158, ¶ 242.b-h.)  United further alleges that Counter-Defendants' drug testing and billing practices misled United. United has no evidence of deception.  All of the claims United paid were submitted with comprehensive information sufficient for United to make a medical necessity and coverage determination under the patients' plans. There is no evidence of a deception in the Counter-Defendants' claim forms.

Accordingly, there was no "objective deception."  United cannot assert or produce evidence that the TMC Facilities engaged in any deceptive trade practice concerning its submission of claims for treatment.  The TMC Facilities obtained preauthorization from United prior to treatment and appropriately rendered that treatment.  (SMF¶¶ 19-22, 38-39.)  In obtaining preauthorization, the TMC Facilities contacted United and identified the patient, referenced the verification of benefits obtained from United, and relayed clinical information. (SMF ¶ 19.) And, throughout each patients' care, the Facilities reached out to United to receive further authorization as needed. (SMF ¶¶ 20-22.)

---

[3] Though United breaks this down into multiple accusations (*see, e.g.*, allegations of a "rote 3/2 Protocol of testing," National Labs submitting "astronomical and unconscionable charges to United," ordering "'double presumptive' tests on the same date of service," and ordering tests), these accusations all concern the assertion that Counter-Defendants tested too often and charged too much for testing.  (Counterclaim, ECF No. 158, ¶ 242.b-h.)

Even if United denied preauthorization for any treatment, or even assuming *arguendo* that preauthorization was never requested, it is undisputed that United makes no payment for treatment, UDT or other ancillary medical service until a claim is submitted by the Facility. (SMF ¶ 30.) For every claim paid by United, complete claims were submitted using industry standard billing formats which clearly indicated to United the member receiving services, the service being provided, the dates of service and date of the claim (*i.e.* the frequency of testing), the panels being tested, and the amounts billed. (SMF ¶ 29.) These claims were submitted only for services actually rendered, and the objective facts stated on the claims form were accurate.

If United needed further clinical information, it requested, or could have requested additional information within time frames afforded to health plans under relevant law. (SMF ¶ 31.) Indeed, while the Facilities and National Labs were "flagged," United automatically requested additional clinical records rather than processing claims. (SMF ¶¶ 32-33.) United's policy provided that "flagged" claims would be processed for payment only if the records were received. (SMF ¶¶ 34-36.) United only paid after receiving these records, or deciding to forego a records review.

United only paid claims after making a determination that the services were medically necessary and otherwise covered under the patient's plan upon processing and/or review of these claims forms and records, where needed. (SMF ¶ 30.) United's processing of claims even involves a determination of the appropriate <u>amount</u> to pay, based on what United unilaterally determines is owed under the patient's United plan. (SMF ¶ 30.) Indeed, for many of the small amount of claims United did pay, it chose to pay less than full billed charges. (SMF ¶ 30, 38.)

None of this is in dispute. Thus, for all claims at issue in United's FDUTPA cause of action, *i.e.* those that United actually did pay, United paid with eyes wide open. United determined which claims or which portion of those claims were payable, and for those, the appropriate amount to pay. There could be no objective deception as to the frequency of testing including any purported "double testing," or the amount billed. Nor could there be damages "caused" by any purported deceptive trade practice, because United did not objectively or reasonably rely on Counter-Defendants' treatment, UDT or billing practices. United cannot produce evidence to the contrary.

Indeed, this is borne out by the alleged damages contained in spreadsheets attached to United's Counterclaim, which reflect that United has long refused to pay the vast majority of claims submitted by Plaintiffs during the relevant claims period. From years 2014-2017, United only paid on 14.5% of total claims, and paid about **9%** of the billed amount of all claims. (SMF ¶ 40.)

This is not a case where United contends, let alone can produce evidence, that the bills were for phantom services – *i.e.*, services never rendered.  Clearly, United did not blindly rely on the claims submitted by Counter-Defendants in voluntarily determining which claims were payable.  United cannot make any evidentiary showing of any objectively deceptive trade practice.

3.    ***United Cannot Make an Evidentiary Showing that Counter-Defendants Engaged in Unlawful Patient Brokering or Insurance Fraud***

United similarly cannot make any showing of a *per se* violation of FDUTPA for purported "unlawful patient brokering" in violation of Fla. Stat. § 817.505, or failure to engage in a good faith effort to collect patient responsibility under Fla. Stat. § 817.234(7).

Fla. Stat. § 817.505, effective July 1, 2017, provides that it is unlawful for a health care provider or facility to "[o]ffer or pay . . . to induce the referral of a patient or patronage to or from a health care provider," or "[s]olicit or receive . . . in return for referring a patient or patronage to or from a health care provider," "a commission, benefit, bonus, rebate, kickback, or bribe." The statute expressly does not apply to "[a]ny discount, payment, waiver of payment or payment practice not prohibited by 42 U.S.C. §1320a-7b(b) [the federal "Anti-Kickback Statute"] or regulations promulgated thereunder."  Fla. Stat. § 817.505(3).  United bases its "patient brokering claim on allegations that  (a) AIR purportedly "makes money" by "plac[ing] or "refer[ring]" patients "to Treasure Coast and Lukens, (b) AIR pays its call center employees for the same, and (c) AIR and the TMC Facilities "pay for patients' flights."[4]  (Counterclaim, ECF No. 158, ¶¶ 88-108.)  None of this, even if true, constitutes unlawful "patient brokering."

---

[4] United misleadingly attempts to lump the TMC Entities with unscrupulous treatment centers in Florida which engage in illegal patient brokering in order to support its assertions.  For instance, in support of a motion (ECF No. 147), United attached a criminal complaint issued against wholly unrelated parties in *U.S. v. Eric Snyder and Christopher Fuller*, and labels the alleged criminal activity as an "unfortunately common scheme" compared to the TMC Entities' practices. (ECF No. 147, Ex. J.).  The criminal defendants in *Snyder* were accused, among other egregious things, of hiring third-party recruiters who went out to on-site locations frequented by addicts. While there, those recruiters gave potential clients drugs and alcohol to entice them into attending defendant's facility and ensure an initial positive UDT.  *Id.*

Even United's worst accusations against TMC have no resemblance whatsoever to such unlawful conduct.    To be clear, United's patient brokering accusations are that AIR and their call center employees "refer" or place patients to the TMC Facilities with which they are affiliated and share common ownership.  The TMC Facilities do not engage third-party recruiters or brokers to find potential clients, as is the normal instance of patient brokering.

First, AIR is not a "broker" for the TMC Facilities, and intracompany transfer of funds does not constitute unlawful patient brokering. United misleadingly accuses AIR of "getting paid, for patients" from Counter-Defendants' facilities for purported "referrals." Yet it is undisputed that AIR and the TMC Facilities are all under common ownership and control. (SMF ¶¶ 5, 6.) It is a regular business practice to do business through multiple affiliated entities for operational and administrative efficiency, such as AIR providing centralized call center services and TMC providing centralized management services for the TMC Entities. (SMF ¶ 4.) It is also common that where such entities provide different services or serve different communities, their respective revenues and operating expenses can vary markedly. Because all these entities are under common control, the managing head(s) may desire to move "surplus" revenue between entities to fund those, like AIR, who does not render patient care and therefore does not receive direct income in order to fund its operations. (SMF ¶ 13.) This is not payment for "referrals."

The TMC Entities cannot "broker" or "refer" patients to themselves. Nor would there be any practical incentive for AIR to be paid on a "referral" basis, since the funds all run to the same common ownership. The U.S. Department of Health and Human Services, Office of the Inspector General ("OIG"), tasked with implementing and investigating violations of the Anti-Kickback Statute, has opined that where "payments are transferred within a single entity, for example, from one division to another," or "payments" are made "between wholly owned subsidiaries and other payments between entities where exclusive ownership control is present and the practice is not otherwise abusive," the Anti-Kickback Statute—and thus, the patient brokering Statute—is not implicated. 56 Fed.Reg. 35983, 35984 (July 29, 1991).[5]

Second, United accuses AIR of improperly paying its own employees who work in the call center. § 817.505 and the Anti-Kickback Statute are not meant to govern how an entity pays its own employees. The Anti-Kickback Statute expressly provides a "safe harbor" for "any amount paid by

---

[5] Further, AIR's marketing efforts, even if funded by TMC, do not implicate § 817.505. Though it does not serve as the basis of United's patient brokering allegations, United's Counterclaim takes issue with TMC's use of internet advertising. "[S]ection 817.505 does not inhibit a person's right generally to solicit business," and "does not prohibit routine advertising and marketing." *State v. Rubio*, 917 So. 2d 383, 396 (Fla. 5th DCA 2005). The OIG has affirmed that "marketing and advertising activities should not be subject to prosecution" when they "are passive in nature and do not involve direct contact with program beneficiaries," or where the individual or entity involved in these promotions is not involved in the delivery of health care." *State v. Harden*, 938 So.2d 480, 494 (Fla. 2006) (citing 56 Fed.Reg. 35,952).

an employer to [a] [bona fide] employee for employment in the provision of covered items or services." 42 U.S.C. § 1320a-7b(b)(3)(B); *see* Fla. Stat. § 817.505(3) (patient brokering statute does not apply to payments or payment practices permitted under the Federal Anti-Kickback Statute). The Supreme Court of Florida has held that this safe harbor applies to "'per head' referral payments" made to "bona fide employee[s]" involved in "marketing and advertising activities." *State v. Harden*, 938 So.2d 480, 494-95 (Fla. 2006). Here, AIR employees do not even engage in marketing, let alone seek out potential clients through making cold calls or recruiting patients in the field. (SMF ¶ 8.) Indeed, AIR employees do not engage in any "brokering" or "referral" of patients at all. AIR employees accept incoming calls, verify  insurance coverage and direct those patients to an appropriate facility. (SMF ¶¶ 8, 9.) Payments to AIR employees are not evidence of any unlawful "patient brokering."

Third, Counter-Defendants do not pay for patients' flights. (SMF ¶ 15.) Though AIR call center employees have helped arrange flights, and have booked flights for patients, the charges paid for flights are billed to the patient. (SMF ¶ 15.) However, even if AIR provided flights to a TMC Facility, this does not constitute patient brokering under § 817.505. The statute proscribes payments to induce a <u>referral</u> of a patient to or from a health care provider. The statute says nothing about a person or health care facility's offer to pay or provide any benefit to <u>a patient</u>. Even if United were able to prove this allegation, arranging flights for patients would still not constitute any "referral" of a patient to or from any health care provider or facility.[6]

As for Fla. Stat. § 817.234(7), the statute makes it unlawful for a provider "to engage in a general business practice" of "agree[ing]" or "intend[ing] to waive deductibles or copayments." The evidence reflects that TMC's "general business practice," is instead to make good faith efforts to collect patient responsibility. (SMF ¶¶ 23-28.) Fla. Stat. § 817.234(7) ("With respect to a determination as to whether a service provider has engaged in such general business practice,

---

[6] Further, paying for a flight does not constitute an offer or pay of any "commission," "bonus," "rebate," "kickback," or "bribe." The July 1, 2017 amendment to the current version of § 817.505, which post-dates most of the claims subject to United's Counterclaim (U.F. ¶ 38.), expressly added that offer or pay of a "benefit" could constitute unlawful patient brokering, to account for benefits not previously covered (though again, intending to proscribe benefits to patient brokers, not to the patient him or herself). *See* FL HB 807; 2017 amendment by s. 24, ch. 2017-173. Even if the provision of things like "flights" to a patient could constitute patient brokering as of the July 1, 2017 amendment, it would not have for any of the claims at issue in United's Counterclaim which predate this amendment.

consideration shall be given to evidence whether the . . . provider made a good faith attempt to collect such deductible or copayment.")  The TMC Entities' practice is to collect whatever patient responsibility it can up front.  (SMF ¶ 24.)  For amounts that could not be collected at intake, or that cannot be determined until a claim is processed, TMC sends out collection statements each month for at least the first three months after  a patient has outstanding amounts due, and follow up with periodic phone calls and a collection agency, if needed.  (SMF ¶ 26.)  Recently, TMC engaged a collection agency to engage in further collection efforts on behalf of the TMC Entities if the patient still has not paid all outstanding amounts.  (SMF ¶ 28.)

Further, as a threshold matter, even if United could prove a violation of the patient brokering or co-pay waiver statutes, which it cannot, violation of these statutes do not constitute a *per se* violation of FDUTPA.  "Violations of law or statutes that give rise to a FDUTPA claim must be of the kind that proscribe unfair trade practices or unfair methods of competition, not . . . a violation of any law or statute that might have some benefit to consumers."  *In re Edgewater by the Bay, LLLP*, 419 B.R. 511, 516 (S.D. Fla. 2009).  "A general, indirect link between a statute and consumer protection goals is insufficient to uphold a FDUTPA claim." *Hucke v. Kubra Data Transfer Ltd.*, 2015 WL 12085833, *8 (S.D. Fla. Oct. 8, 2015).

Neither statute on its face concerns any proscription of a practice involving trade or unfair competition.  Both statutes are found under Florida's statutory framework for criminal fraud, and do not work in the consumer context.  Fla. Stat. § 817.234 is designed to protect insurance companies from fraudulent billing practices.  As recognized in *Physicians Injury Care Ctr*, an insurer is not a consumer in this context.  Because § 817.234 is not designed to prevent deceptive practices in the consumer context, it will not support a FDUTPA claim. *See Hucke*, 2015 WL 12085833 at *8.  And § 817.505's prohibition against unlawful patient brokering is not meant to protect insurers like United at all.  Instead, the statute is intended to protect the well-being of patients put at risk by abusive practices which result in provider decisions based on financial interests rather than the patient's quality of care or necessity of services.  "Trade" or "competitive" concerns of the patient are not at stake, let alone directly at issue.

United cannot make a legal or factual showing of that Counter-Defendants engaged in any conduct which constituted a *per se* violation of FDUTPA.

**C.**   **Summary Judgment Should be Entered for Cross-Defendants on United's Unjust Enrichment Claim**

To state a claim for unjust enrichment, a plaintiff must allege: 1) benefit conferred upon a defendant by the plaintiff, 2) the defendant's appreciation of benefit, and 3) the defendant's acceptance and retention of benefit when circumstances make it inequitable for him to retain it. *Florida Power Corp. v. City of Winter* Park, 887 So.2d 1237, 1241 n.4 (Fla. 2004). United's Unjust Enrichment cause of action is based on the same factual accusations underlying its FDUTPA cause of action, and similarly fails for many of the same reasons.

United asserts that Counter-Defendants received benefits to which it was not entitled, for the same purported "deception" and "patient brokering" which underlies its FDUTPA cause of action. (ECF No. 158, ¶ 251 ("false and fraudulent statements or omissions of fact to United, with respect to the medical necessity and authorization for the UDT it allegedly performed."); *Id.* at ¶ 252 ("Counter-Defendants engaged in an unlawful patient brokering and kickback scheme through which patients were referred to Web treatment facilities, rendering claims for treatment void and non-compensable.").) For the same reasons that United cannot prove a FDUTPA violation, United could not have been "defrauded" or "deceived" by claims submitted for purportedly excessive or unnecessary services because submitted claims forms provided United all the information it needed to know the frequency, necessity and charged amount of each claim. There was no "false" or "fraudulent" statement, or at least not any sort of justifiable reliance on any claim submitted for purportedly "unnecessary" services. Also, none of the purported acts of "patient brokering" actually constitutes unlawful patient brokering in violation of Fla. Stat. § 817.505. United cannot produce any other evidence of TMC business practices which comes anywhere near unlawful "fraud" or "patient brokering" so as to warrant equitable relief.

Further, it is undisputed that United voluntarily paid for services that were actually rendered by Counter-Defendants. There is no assertion that the services paid for by United were not actually rendered. Florida's "voluntary payment doctrine provides that 'where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered.'" *Ruiz v. Brink's Home Sec., Inc.*, 777 So.2d 1062, 1064 (Fla. 2d DCA 2001); *Hall v. Humana Hosp. Daytona Beach*, 686 So.2d 653, 656 (Fla. 5th DCA 1996) (finding no unjust enrichment in a healthcare provider being paid the full price for services rendered); and see *New York Life Ins. Co. v. Leeks*, 165 So. 50, 53 (Fla. 1935) (finding insured could not recoup money voluntarily paid to insurer); *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So.2d 1289 (Fla. 1st DCA

2000) (applying voluntary payment doctrine to dismiss equitable claim for overpayments: "It does not matter that the payment may have been upon a mistaken belief . . . .").

In *Hall*, purchasers of healthcare services sued a provider under an unjust enrichment theory for allegedly charging unreasonable fees for ancillary medical services received which plaintiffs paid. *Hall*, 686 So. 2d at 655-656. Their suit sought "a refund of such overpayments." *Id*. at 656. Applying the voluntary payment doctrine, the court found nothing unjust "in the act of sending a bill" to a purchaser of healthcare services "seeking payment" after the services have been rendered. *Id*. This is precisely what happened in the present action. The TMC Entities sent United their bills for the services for which United chose to pay a small portion. The Plaintiffs did not engage in any trickery in claims submission, or any other <u>inequitable</u> act compelling payment from United.

## D.   <u>Summary Judgment Should be Entered for Cross-Defendants on United's Overpayments Claim Under ERISA 502(a)(3)</u>

ERISA § 502(a)(3) allows a civil action brought by a "participant, beneficiary or fiduciary" to "enjoin any act or practice which violates any provision of [ERISA] or the terms of the [ERISA] plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Section 502(a)(3) specifically allows only for injunctive or other equitable relief, and "must refer to 'those categories of relief that were *typically* available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Popowski v. Parrott*, 461 F. 3d 1367, 1372 (11th Cir. 2006) (same). "Whether a remedy is 'legal or equitable depends on the basis for [the plaintiff's] claim and the nature of the underlying remedies sought.'" *Id*. "[A] claim that, in essence, seeks 'nothing more than compensatory *damages'* – for example, one that seeks simply to 'impose personal liability . . . for a contractual obligation to pay money' is not equitable for the purposes of [ERISA § 502(a)(3)]." *Popowski*, 461 F.3d at 1372 (quoting *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 363 (2006)).

United's § 502(a)(3) cause of action seeks nothing more than recoupment of benefits paid to National Labs which purportedly "do not constitute covered services under the relevant health and welfare benefit plans." (Counterclaim, ECF No. 158, ¶ 264.) In order to attempt to fashion its claim for compensatory damages as equitable, United seeks a "constructive trust" over these benefits payments, and an "order requiring the return of such funds." Counter-Defendants' Motion to Dismiss addresses that United's § 502(a)(3) cause of action should be dismissed because it is nothing more than a claim for compensatory damages, rather than relief in equity. But in the alternative, summary judgment should also be entered in Counter-Defendants' favor because United cannot meet

its burden of proving any violation of ERISA or an ERISA plan, or any "wrongdoing" on the part of Counter-Defendants that would warrant equitable relief.

As the basis for its request for recoupment, United asserts that National Labs used the wrong Place of Service ("POS") code on its claims.  (*Id.* at ¶¶ 190-202.)  The actual technical component of services rendered by National Labs was at the laboratory itself, which would seemingly, and logically correspond to using POS Code 81, for "Independent Laboratory."  However, according to United, National Labs should have identified the POS as the place where the sample was collected, not where testing was performed.   (*Id.*)   United contends that its own unilaterally set "Reimbursement Policies" require samples collected at the treatment facility be coded as 11 or 22 in order to get paid (which refer to "Office" or "On Campus-Outpatient Hospital," neither of which fit even the treatment facilities' description), even though National Labs is not contracted with United and has no legal obligation to fill out claims in accordance with any reimbursement policy.  (*Id.* at ¶ 196.)  Because of what United asserts was a billing error, United seeks a constructive trust be placed on all payments made, to be returned to United.

As an initial matter, § 502(a)(3) as stated only allows equitable relief to address "violations" of ERISA plans or provisions.  United has not alleged, and cannot meet its burden of showing that any ERISA provision or plan was violated.  *Green v. Holland*, 480 F.3d 1216, 1225-26 (11th Cir. 2007) ("either an ERISA violation or a Plan violation . . . is a prerequisite to pursuing an action for equitable relief under the plain language of § 502(a)(3)").  National Labs is not contracted with United, and is not a party to any ERISA plan.   National Labs is not obligated to submit testing in accordance with any United Reimbursement Policy.

Second, the elements of a constructive trust are "(1) a confidential relationship, by which (2) one acquires an advantage he should not, in equity and good conscience retain." *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1029-30 (11th Cir. 1995).  A constructive trust is a remedy in equity "to prevent the unjust enrichment of culpable parties," where the beneficiary of the trust "is entitled to have his original interest restored in his property which was wrongfully taken." *Id.*  "The essence of the theory of constructive trust is . . . to prevent a person from taking advantage of his or her own wrongdoing." *Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao E Exportacao Ltda*, 2015 U.S. Dist. LEXIS 184368, *7 (S.D. Fla. Mar. 2, 2015).

It is undisputed that no such "confidential relationship" exists between United and Counter-Defendants.  National Labs certainly does not act as any sort of fiduciary to United, and while

United may act as a fiduciary *to the Plan and its beneficiaries*, no such relationship exists between United and National Labs.  National Labs is not a party to the ERISA plans and United does not plead otherwise.  Further, National Lab's purported miscoding of the POS is not legally cognizable "wrongful" behavior on the part of National Labs.  There is no evidence of any intent on the part of National Labs to defraud or deceive United.  To the contrary, the claims forms submitted for each UDT set forth the "service facility location" where the sample was collected, and indicates that National Labs is an "outside lab."  (SMF ¶ 29.)  Further, United did or could have requested clinical records and additional information which reveal the facility where a sample is collected.  Nothing in the evidence contradicts this.  United cannot get equitable relief because it now feels it made a mistake in paying claims.  Summary Judgment should be entered for Counter-Defendants as to United's ERISA § 502(a)(3) Overpayment cause of action.

## E.   In the Alternative, Partial Summary Judgment Should be Entered for Cross-Defendants on United's Time-Barred Claims

The payment dates of the claims subject to United's Counterclaims can be discerned from the spreadsheets attached thereto, spanning years 2014-2017.  (SMF ¶ 38.)  Many of the claims are time-barred pursuant to Florida's "Prompt Pay" statutes set forth in Fla. Stat. §§ 641.3155(5)(a)(1) and 627.6131(6)(a)(1), which require that "[a]ll claims for overpayment must be submitted to a provider within 30 months" after United's "payment of the claim."  United's Counterclaims are nothing more than recoupment of overpayments on grounds of medical necessity, pled under FDUTPA and Unjust Enrichment to try to get around these timing and procedure requirements.  The **only** damages sought by United are for recoupment of purported overpayments.

The same time limitation applies to United's ERISA claim.  ERISA contains a limitation of actions provision that only applies for certain breach of fiduciary duty actions, which does not apply here.  29 U.S. Code § 1113.  For other ERISA claims, the "most analogous" limitation provided under state law applies.  *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238.  There is no more analogous state law limitation for a "Claim for Overpayment" than Florida's "Prompt Pay" regulations.  Even assuming United's causes of action survive summary judgment, partial summary judgment should be entered against United on all claims paid by United prior to October 31, 2015, *i.e.*, 30 months prior to the filing of United's Original Counterclaim, as time barred.

## F.   United's Request for Declaratory Relief Should be Denied

United seeks declaratory orders that (1) Plaintiffs' "unpaid charges for" UDT "are not owed because they are the product of an unlawful testing scheme to collect insurance benefits," and (2)

any "unpaid charges for any service that are the product of a patient brokering or kickback arrangement are not owed because they are deceptive, unfair and unlawful." (*Id.* at ¶ 275.)

As set forth in Counter-Defendants' Motion to Dismiss, United's declaratory relief cause of action seeks nothing more than affirmation that it prevails on its defenses to Plaintiffs' FAC. This will be litigated in connection with Plaintiffs' affirmative causes of action, and United's request for declaratory relief serves no salutary purpose. *See Fernando Grinberg Trust Success Int. Props. LLC v. Scottsdale Ins. Co.*, No. 10-20448-CIV, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010) ("a trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court").

Further, United's request for a declaration that any "unpaid charges for any service that are the product of a patient brokering or kickback arrangement are not owed" is untenable as a matter of law. This very same requested relief has been rejected at the motion to dismiss stage by numerous courts. For example, the District Court of the Middle District of Florida, in *Millenium Laboratories, Inc. v. Universal Oral Fluid Laboratories, LLC*, 2012 WL 12905083, at *4 (M.D. Fla. Apr. 25, 2012), held that a plaintiff is "unable to seek declaratory relief as to Florida Statutes §§ 817.505, 456.054 and 483.245 because none of these statutes appear to imply a private right of action." The *Millenium* court reasoned that "[t]he Declaratory Judgment Act is not an independent source of federal jurisdiction and does not create remedies that are otherwise unavailable," such that the availability of declaratory relief "presupposes the existence of a judicially remedial right." *Id.*

This District Court in *State Farm* similarly rejected and dismissed the exact declaratory relief requested here, that "any 'unpaid charges of [providers] that have been submitted . . .. are not owed because they are the product of an arrangement prohibited by Florida Statutes §§ 395.0185, 456.054, 817.505 . . . ,'" on grounds that "Plaintiff [insurer] has failed to establish that Defendant [provider] in fact is owed nothing for its services," because violations of the "patient brokering" statutes did not render "[a]ll charges or reimbursement claims made in violation of these statutes . . . unlawful or noncompensable or unenforceable." *Id.* at 1329-30 (quotations omitted).

Accordingly, United's request for declaratory relief should be denied.

### G.    Partial Summary Judgment Should be Entered Precluding Assertion of United's 15th and 18th Affirmative Defenses

United's 15th and 18th affirmative defenses assert that "Plaintiffs' claims are non-compensable" for purported violations of Fla. Stat. § 817.234(7)(a) and 817.505, the same co-pay

waiver and patient brokering statutes underlying United's FDUTPA and Unjust Enrichment Causes of Action.  Summary judgment should be entered against United on these defenses for the same reasons §§ 817.234(7) and 817.505 cannot support United's Counterclaim.

The "burden of proving each element of an affirmative defense rests on the party that asserts the defense." *Paladin Shipping Co. v. Star Capital Fund, Ltd. Liab. Co.*, 491 F. App'x 42, 44 (11th Cir. 2012) (quoting *Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1097 (Fla. 2010)).  Thus, United's burden of showing the existence of facts supporting Plaintiffs' violation of §§ 817.234(7) and 817.505 to defeat summary judgment is the same for United's affirmative defenses as it is for United's Counterclaim. *Celotex*, 477 U.S. at 322.  For the reasons set forth in full above, United cannot meet this burden.

United cannot produce evidence showing that Plaintiffs have a "general business practice" of waiving patient responsibility, or that Plaintiffs do not make good faith attempts to collect such patient responsibility.  (SMF ¶¶ 23-29.)  Nor can United produce evidence showing that Plaintiffs' committed unlawful patient brokering, especially considering that United's accusations of Plaintiffs paying AIR for placing patients and/or AIR paying for patients' flights, even if true, do not constitute patient brokering.  Moreover, violations of these statutes do not render Plaintiffs' unpaid benefits claims "noncompensable" as asserted in United's affirmative defenses.  *State Farm*, 278 F.Supp.3d at 1329-30 ("the Court does not agree that Plaintiff is owed nothing for Defendants' services merely because of these violations").

For the reasons set forth in full herein, partial summary judgment should be entered against United on its 15th and 18th affirmative defenses.

## V.   CONCLUSION

For the reasons stated herein, the Court should grant Plaintiffs' and Counter-Defendants' Motion in its entirety.

Dated: July 13, 2018                              Respectfully submitted,

                                                  **CIMO MAZER MARK PLLC**

                                                  */s/ Jason S. Mazer*
                                                  **Jason S. Mazer**
                                                  jmazer@cmmlawgroup.com
                                                  Florida Bar No. 0149871
                                                  100 Southeast Second Street
                                                  Suite 3650
                                                  Miami, FL  33131
                                                  Telephone: (305) 374-6481
                                                  Facsimile: (305) 374-6488

                                                  and

                                                  **Anthony S. Hearn**
                                                  ahearn@vpl-law.com
                                                  **VER PLOEG & LUMPKIN, P.A.**
                                                  Florida Bar No.  102302
                                                  100 S.E. 2nd Street, 30th Floor
                                                  Miami, Florida 33131
                                                  Telephone:  (305) 577-3996
                                                  Facsimile:  (305) 577-3558

                                                  and

                                                  **Glenn E. Solomon**\*
                                                  gsolomon@health-law.com
                                                  **Jonathan H. Shin**\*
                                                  jshin@health-law.com
                                                  **David S. Schumacher**\*
                                                  dschumacher@health-law.com
                                                  **HOOPER, LUNDY & BOOKMAN, PC**
                                                  Los Angeles
                                                  1875 Century Park East, Suite 1600
                                                  Los Angeles, CA 90067
                                                  Tel: 310-551-8179

                                                  *Attorneys for Plaintiffs and Counter-Defendants*

                                                  *\*Admitted Pro Hac Vice*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served via Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing listed on the Service List below.

*/s/ Jason S. Mazer*_____
**Jason Mazer**

*Counsel for Plaintiffs and Counter-Defendants*

## <u>SERVICE LIST</u>

David I. Spector, Esq.
Sandra L. Heller, Esq.
Irene A. Bassel Frick, Esq.
Darcie A. Thompson, Esq.
Andrew Lowenstein, Esq.
**AKERMAN LLP**
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313
david.spector@akerman.com
sandra.heller@akerman.com
irene.bassel@akerman.com
darcie.thompson@akerman.com

*Attorneys for Unitedhealth Group, Inc.;*
*United, Healthcare Services, Inc.;*
*Unitedhealthcare Insurance Company, Inc.;*
*United Healthcare Services, LLC; Optum,*
*Inc.; and Golden Rule Insurance Company*